UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
PHOENIX LIGHT SF LIMITED, et al.,   :
                                               :

                       Plaintiffs,    :            No. 14-cv-10102-KPF-SN
                                               :

    -against-                          :

WELLS FARGO BANK, N.A.,            :

                       Defendant.    :
------------------------------------------------------x


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT'S MOTION TO SUPPLEMENT ITS SUMMARY JUDGMENT
BRIEFING AND ITS FEDERAL RULE OF CIVIL PROCEDURE 56.1 STATEMENT**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

APPLICABLE STANDARD ................................................................................................4

ARGUMENT ................................................................................................................5

   I.   Wells Fargo waived its objection to Plaintiffs' status as real parties in interest................5

   II.   Wells Fargo waived any right to seek summary judgment with respect to its champerty
      defense by failing to raise the issue in its motion ............................................................7

   III.  Wells Fargo should not be permitted to amend its motion to assert a res judicata or
       collateral estoppel defense because it would be futile to do so.........................................9

      A.  The issues litigated in U.S. Bank were not identical because the defendant had a
           defense unavailable to Wells Fargo and the case involved different securities ...........9

      B.  A dismissal for lack of standing is not on the merits....................................................11

      C.  Collateral estoppel does not apply to pure questions of law ......................................11

      D.  Plaintiffs did not have a full and fair opportunity to litigate the issue of champerty ..15

   IV. The Phoenix Light Plaintiffs and Plaintiff Commerzbank would be prejudiced if Wells
       Fargo is permitted to litigate this issue in the context of the current summary judgment
       motion ................................................................................................................16

      A.  Plaintiffs would be prejudiced if the Phoenix Light Plaintiffs were forced to respond
           to the complicated issues raised in U.S. Bank in a joint brief subject to the current
           order regarding page limits ......................................................................................16

      B.  Wells Fargo sandbagged Plaintiffs in an attempt to obtain a more favorable order
           concerning page limits ............................................................................................17

      C.  If the Court is inclined to allow Wells Fargo to raise its belated champerty defense
           now it should order Wells Fargo to file a new motion or allow Plaintiffs to file a
           much longer opposition brief ..................................................................................19

CONCLUSION..............................................................................................................20

# TABLE OF AUTHORITIES

**Case**                                                                    **Page(s)**

*Aini v. Sun Taiyang Co.*,
   978 F. Supp. 533 (S.D.N.Y. 1997) ............................................................... 6

*All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
   436 F.3d 82 (2d Cir. 2006)........................................................................... 8

*Am. Home Assur. Co. v. Int'l Ins. Co.*,
   90 N.Y.2d 433 (1997)........................................................................... 11, 12

*AM Cosmetics, Inc. v. Solomon*,
   67 F. Supp. 2d 312 (S.D.N.Y. 1999) ............................................................ 8

*Baez v. Delta Airlines Inc.*,
   No. 12-cv-3672, 2013 WL 5272935 (S.D.N.Y. 2013) ................................ 4, 17

*Bluebird Partners, L.P. v. First Fid. Bank, N.A.*,
   94 N.Y.2d 726 (2000)................................................................................ 7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ................................................................................ 19

*Clark v. Chase Nat. Bank of City of New York*,
   45 F. Supp. 820 (S.D.N.Y. 1942) ................................................................ 6

*Collins v. E.I. DuPont de Nemours & Co.*,
   34 F.3d 172 (3d Cir. 1994)........................................................................ 15

*Cook v. City of Utica*,
   88 N.Y.2d 833 (1996).............................................................................. 15

*Frommert v. Conkright*,
   535 F.3d 111 (2d Cir. 2008)....................................................................... 6

*Fuentes v. Brookhaven Mem'l Hosp.*,
   10 A.D.3d 384 (2004)............................................................................... 9

*George A. Fuller Co. v. Alexander & Reed, Esqs.*,
   760 F. Supp. 381 (S.D.N.Y. 1991) ............................................................... 8

*Hervochon v. Iona Coll.*,
   2019 WL 2451431 (S.D.N.Y. Feb. 15, 2019) ................................................ 6

*Hill v. Rayboy-Brauenstein*,
   No. 02 CIV. 3770 (RJS), 2008 WL 231439 (S.D.N.Y. Jan. 24, 2008)................. 19

*House of Eur. Funding I Ltd. v. Wells Fargo Bank*,
   2015 WL 5190432 (S.D.N.Y. Sept. 4, 2015) ............................................ 6, 14

*In re JPMorgan Chase Derivative Litig.*,
    No. 17 CIV. 5066 (JFK), 2018 WL 2305564 (S.D.N.Y. May 21, 2018).........................9-10

*In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*,
    397 F. Supp. 3d 406 (S.D.N.Y. 2019) ...................................................................... 11

*Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*,
    No. 13 CIV. 2576 (LGS), 2017 WL 1133425 (S.D.N.Y. Mar. 24, 2017) ........................ 19

*Irwin v. Curie*,
    171 N.Y. 409 (1902)............................................................................................. 10

*J.S. v. Attica Cent. Sch.*,
    2011 WL 4498369 (W.D.N.Y. Sept. 27, 2011)............................................................ 6

*Jewelers Mut. Ins. Co. v. N. Barquet, Inc.*,
    410 F.3d 2 (1st Cir. 2005)...................................................................................... 8

*Levy v. Young Adult Inst., Inc.*,
    No. 13-cv-02861, 2016 WL 3637109 (S.D.N.Y. 2016)................................................ 4

*Limpar Realty Corp. v. Uswiss Realty Holding, Inc.*,
    112 A.D.2d 834 (1st Dep't 1985)............................................................................ 13

*LNC Invs., Inc. v. First Fid. Bank.*,
    62000 WL 375236 (S.D.N.Y. Apr. 11, 2000)............................................................. 8

*Marvel Characters, Inc. v. Simon*,
    310 F.3d 280 (2d Cir. 2002).............................................................................. 9, 15

*NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.*,
    262 F. Supp. 2d 134 (S.D.N.Y. 2003) ..................................................................... 10

*Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC*,
    149 A.D.3d 127 (1st Dep't 2017)............................................................................ 14

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    2016 WL 1169515 (S.D.N.Y. Mar. 22, 2016).......................................................... 6, 7

*Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*,
    2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020).................................................... passim

*Prudential Oil Corp. v. Phillips Petroleum Co.*,
    69 A.D.2d 763 (1st Dep't 1979).............................................................................. 13

*Raab v. Kaleida Health*,
    60 A.D.3d 1380 (4th Dept. 2009)........................................................................ 9, 10

*SCR Joint Venture, L.P. v. Warshawsky*,
    2007 WL 9710547 (E.D.N.Y. June 6, 2007).............................................................. 8

iii

*Singleton Mgmt., Inc. v. Compere*,
   243 A.D.2d 213 (1st Dept. 1998) ....................................................................................... 11

*Sira v. Morton*,
   380 F.3d 57 (2d. Cir. 2004) ............................................................................................... 19

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*,
   554 U.S. 269 (2008) .......................................................................................................... 12

*Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
   756 F.3d 73 (2d Cir. 2014) ................................................................................................ 19

*Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*,
   13 N.Y.3d 190 (2009) .................................................................................................. 12, 13

*United HealthCare Corp. v. Am. Trade Ins. Co.*,
   88 F.3d 563 (8th Cir. 1996) ................................................................................................. 6

*United States v. Moser*,
   266 U.S. 236 (1924) ..................................................................................................... 11-12

*Zarda v. Altitude Express*,
   855 F.3d 76 (2d Cir. 2017) ............................................................................................. 9, 10

**Rules**

Federal Rule of Civil Procedure 8(c) ........................................................................................ 8

Federal Rule of Civil Procedure 16(b)(4) ................................................................................. 4

Federal Rule of Civil Procedure 56.1 .............................................................................1, 16, 18

Plaintiffs Phoenix Light SF Ltd., Blue Heron Funding II Ltd., Blue Heron Funding V

Ltd., Blue Heron Funding IX Ltd., C-BASS CBO XIV Ltd., C-BASS CBO XVII Ltd., Kleros

Preferred Funding V PLC, and Silver Elms CDO PLC (collectively, "Phoenix Light" or

"Plaintiffs") respectfully submit this Memorandum of Law in Opposition to Defendant Wells

Fargo Bank, N.A.'s ("Wells Fargo" or "Defendant") Motion to Supplement Its Summary

Judgment Briefing and Its Federal Rule of Civil Procedure 56.1 Statement ("Motion" or "Mot.").

Plaintiff Commerzbank AG, the plaintiff in *Commerzbank AG v. Wells Fargo Bank, N.A.*, No.

15-cv-10033, joins in the arguments set forth in Section IV.

## PRELIMINARY STATEMENT

Plaintiffs are investment vehicles that issued notes to their investors backed by RMBS

and other securities. In order to secure their obligation to pay such notes, Plaintiffs pledged the

RMBS and other collateral to an indenture trustee. Rather than rely on their indenture trustees to

pursue claims on Plaintiffs' behalf in this action, Plaintiffs sued the RMBS trustees directly. This

was the only prudent course to take because Plaintiffs' indenture trustees, including Wells Fargo,

are also RMBS trustees; they were not going to sue themselves or file actions taking positions

that could be used against them.

This action has been pending for more than five years. Wells Fargo has never argued that

Plaintiffs are not the real parties in interest entitled to bring the claims asserted or that Plaintiffs'

indenture trustees should have brought these claims on behalf of, or instead of, Plaintiffs. An

objection to a party's status as a real party in interest is waivable and Wells Fargo did so here. As

a result, whether the assignments that Plaintiffs received from their indenture trustees, which

were intended to make clear that all the transaction parties agreed Plaintiffs were the proper

parties to bring such claims, are champertous is irrelevant because Wells Fargo has never argued Plaintiffs are not the real parties in interest even absent an assignment.

Wells Fargo filed this Motion hoping to capitalize on *Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2020 WL 1285783 (S.D.N.Y. Mar. 18, 2020) ("*U.S. Bank*"), which held that, under New York law, the prohibition against champerty bars an investment vehicle from taking an assignment of claims to enforce rights held in trust for the benefit of that investment vehicle. The plaintiffs in that action, which include some but not all of the Plaintiffs in this action, recently filed a motion for reconsideration of that ruling. *U.S. Bank*, 1:14-cv-10116-VSB-DCF, ECF Nos. 423-424.

Wells Fargo has not established that there is good cause to amend its current summary judgment motion. Even assuming *arguendo* that Wells Fargo did not waive its challenge to Plaintiffs' status as the real parties in interest with respect to the claims, Wells Fargo has always known that it could argue champerty. It is a party to the very assignments found to be champertous in *U.S. Bank*. Its decision not to seek summary judgment on this issue was deliberate, and the mere fact that another differently situated defendant made a different choice and prevailed (at least for now) does not constitute good cause. There simply is no standing issue unless and until Wells Fargo prevails in striking down the assignments, and it already conceded that summary judgment was not the proper vehicle for asserting its champerty defense.

Perhaps recognizing that a strategic decision not to raise an argument is insufficient cause to amend, Wells Fargo argues that it should be permitted to argue collateral estoppel. But Wells Fargo's preclusion arguments are futile because the issues in *U.S. Bank* were not identical. Unlike Wells Fargo, the defendant in *U.S. Bank* was not a party to the allegedly champertous transaction. Under New York law a party to a purportedly champertous transaction cannot seek

rescission under the doctrine of *in pari delicto*. Moreover, the RMBS at issue in this action are entirely distinct from the RMBS in *U.S. Bank* – the purpose of the assignments of claims relating to the RMBS at-issue was not necessarily decided in *U.S. Bank*. Wells Fargo's preclusion arguments fail for many other reasons, including because: *U.S. Bank* was not a judgment on the merits; pure issues of law are not subject to collateral estoppel; and two Plaintiffs here were not a party in *U.S. Bank* and none of the Plaintiffs had a full and fair opportunity to litigate the issue of champerty.

If the Court granted Wells Fargo's Motion, it would prejudice not only the Plaintiffs in this action, it would also prejudice Commerzbank. Wells Fargo filed a joint motion applicable to both this action and *Commerzbank* because the merits issues in both cases largely overlap. However, Wells Fargo's new arguments have nothing to do with the merits or Commerzbank, yet Wells Fargo insists they be briefed jointly in an attempt to distract from merits briefing. Making matters worse, Wells Fargo has not been candid with Plaintiffs or the Court. After *U.S. Bank* was issued, counsel for Wells Fargo communicated repeatedly with Plaintiffs and the Court concerning the appropriate page limits for the remaining summary judgment briefs. Wells Fargo did not disclose that it was going to interject new arguments, or was even considering the possibility, until the Court entered an order that provided Wells Fargo with a relatively disproportionate number of pages for its reply brief and opposition. When that order was issued, Wells Fargo finally disclosed that it was going to seek an amendment.

Essentially, in two new paragraphs to its motion, Wells Fargo proposes to incorporate the 35-page ruling in *U.S. Bank* by reference and argue that this case is "nearly identical." Of course, the Phoenix Light Plaintiffs would need significantly more space to address the 35-page opinion, all of the differences between that action and this case, the many legal errors in *U.S. Bank*, and

3

all the reasons why Wells Fargo's collateral estoppel arguments are wrong. If the Phoenix Light Plaintiffs fully briefed these issues, it would prejudice both the Phoenix Light Plaintiffs and Commerzbank because they would have to give short shrift to the merits-based issues. And if the Plaintiffs abbreviated their response, they would be severely prejudiced and this Court would have an inadequate record to provide a reasoned opinion. As a result, if the Court is inclined to allow Wells Fargo to raise a champerty defense now – despite its prior strategic decision not to raise it until trial, if at all – the Court should order Wells Fargo to do so in a separate motion subject to the default rules of this District concerning page limits. Alternatively, the Court should allow Plaintiffs an additional twenty-five pages for their opposition and cross-motion.

## APPLICABLE STANDARD

Wells Fargo seeks to amend this Court's scheduling order governing submission of summary judgment motions to permit it to assert arguments not previously presented. Pursuant to Federal Rule of Civil Procedure 16(b)(4), Wells Fargo must show that there is "good cause" for its failure to include these arguments previously. Whether good cause exists "depends on the diligence of the moving party," and courts "typically will deny a request that comes so late in the litigation that it will delay the case or prejudice any of the parties to the action." *Levy v. Young Adult Inst., Inc.*, No. 13-cv-02861, 2016 WL 3637109, at * 3 (S.D.N.Y. 2016) (internal citations omitted). Motions to amend can also be denied "when the movant knew or should have known of the facts upon which the amendment is based," especially if the movant cannot excuse their delay. *Baez v. Delta Airlines Inc.*, No. 12-cv-3672, 2013 WL 5272935, at *5 (S.D.N.Y. 2013) (internal citations omitted).

## ARGUMENT

Wells Fargo's Motion does not establish that good cause exists to modify the Court's scheduling order, which was entered by the Court after multiple conferences to address disputed issues and already provided an extension of Wells Fargo's time to submit its summary judgment motion from December 2019 until March 2020.[1] Wells Fargo made a deliberate decision not to seek summary judgment on its affirmative defense of champerty. The mere fact that another differently situated defendant in another action prevailed on the defense (subject to a pending reconsideration motion and potential appeal) in an action against some, but not all, of the Plaintiffs, in this action does not constitute good cause because (i) Wells Fargo waived any argument that Plaintiffs are not the real parties in interest in this action; (ii) even if the assignments were required, Wells Fargo conceded that its champerty defense should be adjudicated at trial, if at all; (iii) Wells Fargo's collateral estoppel argument is futile; and (iv) both Phoenix Light and Commerzbank would be severely prejudiced if the Court granted the Motion.

### I.     Wells Fargo waived its objection to Plaintiffs' status as real parties in interest

More than five years have passed since this action was filed, yet Wells Fargo never before contended that the Plaintiffs here were not the real party in interest or that their indenture trustees – and not the Plaintiffs themselves – should be pursuing the claims on Plaintiffs' behalf. In contrast, in the *U.S. Bank* matters, the defendants raised this objection in their motion to dismiss filed in 2015, which prompted the plaintiffs to obtain assignments from their indenture

---

[1] Wells Fargo's summary judgment motion was initially due on December 13, 2019. ECF No. 482. However, on November 27, 2019 the parties submitted a joint letter to the Court seeking relief from the default page limits. ECF No. 497. Following a conference on December 7, 2019, the Court entered an order addressing page limits and extended the deadline for Wells Fargo to serve its summary judgment motion to March 13, 2020. ECF No. 502. The Court further directed Plaintiffs to submit a letter by March 27, 2020 advising the Court whether they would file cross-motions for summary judgment. *Id.*

trustees making it clear that they had authority to bring the claims. *E.g., Phoenix Light SF Ltd. v. U.S. Bank Nat'l Ass'n*, 2016 WL 1169515, at *7 (S.D.N.Y. Mar. 22, 2016). Because Wells Fargo never argued that Plaintiffs divested themselves of the right to bring the claims by granting all right, title, and interest in the claims to their indenture trustees, whether the assignments that were at issue in *U.S. Bank* are champertous is completely irrelevant – Wells Fargo never established that Plaintiffs needed them in the first place by raising the real party in interest objection. *House of Eur. Funding I Ltd. v. Wells Fargo Bank*, 2015 WL 5190432, at *7 (S.D.N.Y. Sept. 4, 2015) (holding that CDO issuer's assignment of claims to an indenture trustee raised a "real party in interest" issue, not an Article III standing issue); *accord FDIC v. Bank of N.Y. Mellon,* 15-cv-06560-ALC, ECF No. 47 at 6 (S.D.N.Y. July 10, 2017).

"[A]n objection on real party in interest grounds 'should be raised with reasonable promptness in the trial court proceedings. If not raised in a timely or seasonable fashion, the general rule is that the objection is deemed waived.'"[2] Numerous other courts in this District and elsewhere have found a real party in interest defense is waived if not asserted in the action promptly after the objecting party learned of the issue.[3]

---

[2] *Hervochon v. Iona Coll.*, 2019 WL 2451431, at *10 (S.D.N.Y. Feb. 15, 2019), *report and recommendation adopted*, 2019 WL 1375359 (S.D.N.Y. Mar. 27, 2019) (*quoting United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 569 (8th Cir. 1996) (internal quotations omitted)); *see also Frommert v. Conkright,* 535 F.3d 111, 120 (2d Cir. 2008), *rev'd on other grounds by* 559 U.S. 506 (2010) (holding real party in interest defense is waivable).

[3] *See Hervochon*, 2019 WL 2451431, at *11-12; *Aini v. Sun Taiyang Co.*, 978 F. Supp. 533, 539 n.31 (S.D.N.Y. 1997) (collecting cases); *Clark v. Chase Nat. Bank of City of New York*, 45 F. Supp. 820, 824 (S.D.N.Y. 1942) ("a delay of over four years in making the motion, challenging the Committee's status as the real party in interest, is a waiver of that objection"); *see also J.S. v. Attica Cent. Sch.*, 2011 WL 4498369, at *15-16 (W.D.N.Y. Sept. 27, 2011) (objection waived when defendant failed to raise issue at class certification stage).

## II.     Wells Fargo waived any right to seek summary judgment with respect to its champerty defense by failing to raise the issue in its motion

Even if the Court looked beyond Wells Fargo's failure to raise a real party in interest defense, Wells Fargo cannot show good cause for its failure to seek summary judgment on its affirmative defense of champerty. The only justification it provides is that the Court issued *U.S. Bank* after Wells Fargo filed its summary judgment motion. But Wells Fargo was obviously aware of the assignments because it was a party to some of them and they were referenced in the operative complaint. ECF No. 80 ¶¶ 34-45. And it asserted its champerty defense as an affirmative defense so its failure to include it as a basis for summary judgment was deliberate.

At a minimum, Wells Fargo's failure to include the defense in its motion is a tacit admission that it cannot be resolved on the factual record in this case. The New York Court of Appeals has cautioned against finding agreements champertous at the summary judgment stage because "a finding of champerty as a matter of law might engender uncertainties in the free market system." *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 739 (2000); *id.* at 734-35 (although the New York Court of Appeals "has been willing to find that an action *is not* champertous as a matter of law . . . it has been hesitant to find that an action *is* champertous as a matter of law") (emphasis added). This concern is particularly acute here where all the parties to the transaction agree that Plaintiffs should pursue the claims at issue because their indenture trustees are also the RMBS trustees and, thus, are unwilling to bring the claims.

Wells Fargo's contention that a court has an "obligation" to consider standing is a red herring. The court in *U.S. Bank* found a lack of constitutional and prudential standing – Plaintiffs submit erroneously – only after it concluded that there were no genuine issues of material fact as to defendant's affirmative defense of champerty. *U.S. Bank*, 2020 WL 1285783, at *11 ("Champerty is an affirmative defense for which the defendant bears the burden of proof").

7

Wells Fargo made the strategic decision not to seek an adjudication on the champerty issue in its motion for summary judgment. This Court does not have an affirmative duty to identify merits-based defenses related to the enforcement of a contract that a party may have raised at the summary judgment stage – but did not – merely because an argument could be made that the resolution of that merits-based defense could conceivably impact standing.

There is similarly no duty to stop all proceedings once the Court is notified of a standing objection that a party wishes to raise. In many cases, an issue of "standing may be closely related to, if not inextricably entwined with, an issue on the merits." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87 (2d Cir. 2006). When "the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence." *Id.* at 88. And while a lack of standing defense is generally not waived, the factual arguments that a party can make in support of any standing defense can be limited by its failure to raise a merits-based defense. For example, courts in this District, and elsewhere, have held that a party that fails to raise in its answer an affirmative defense necessary to establish that a contract is unenforceable, including for champerty, cannot contest the existence of the contract on that basis.[4] In such cases, standing must be assessed upon a factual record that includes a valid contract. Because Wells Fargo does

---

[4] *See, e.g.*, *AM Cosmetics, Inc. v. Solomon,* 67 F. Supp. 2d 312, 319 (S.D.N.Y. 1999) (defendants could not argue contract was unenforceable because they "failed to plead the Statute of Frauds as an affirmative defense in their answer"); *George A. Fuller Co. v. Alexander & Reed, Esqs.*, 760 F. Supp. 381, 385-86 (S.D.N.Y. 1991) (defendant could not argue contract was unenforceable because it failed to assert affirmative defense based on failure of consideration); *see also Jewelers Mut. Ins. Co. v. N. Barquet, Inc.,* 410 F.3d 2, 11 (1st Cir. 2005) (statute of frauds defense waived); *SCR Joint Venture, L.P. v. Warshawsky*, 2007 WL 9710547, at *6 (E.D.N.Y. June 6, 2007) (champerty defense waivable) (*aff'd in part and vacated in part on other grounds by* 559 F.3d 133 (2d Cir. 2009)). In *LNC Invs., Inc. v. First Fid. Bank*, the court found that champerty is an affirmative defense within the meaning of Federal Rule of Civil Procedure 8(c) and is, thus, waivable. 2000 WL 375236, at *1 (S.D.N.Y. Apr. 11, 2000). In that case the court "deemed" the defendant's answer amended to include a champerty defense because a co-defendant had raised a standing defense that expressly asserted that the claims "are not assignable." *Id.* at *2.

not appear to dispute that the Plaintiffs have standing if the assignments are given effect, it must

prevail on its champerty defense before challenging standing. It chose not to adjudicate the issue

in its current motion, and an adjudication on that issue must await trial because there is no good

cause to allow Wells Fargo to revisit its strategic choice.

### III.   Wells Fargo should not be permitted to amend its motion to assert a res judicata or collateral estoppel defense because it would be futile to do so

In order to prevail on a collateral estoppel defense, the defendant must prove "(1) the

identical issue was raised in a previous proceeding; (2) the issue was actually litigated and

decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the

issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on

the merits." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 288–89 (2d Cir. 2002) (internal

quotations omitted). Collateral estoppel does not apply for a multitude of reasons discussed

below. Accordingly, Wells Fargo has not shown there is good cause to amend to add this

meritless defense.

### A.   The issues litigated in *U.S. Bank* were not identical because the defendant had a defense unavailable to Wells Fargo and the case involved different securities

Under New York law, a prior judgment dismissing an action is not entitled to preclusive

effect when "dismissal was based upon a defense that was personal to that party." *Raab v.

Kaleida Health*, 60 A.D.3d 1380, 1381 (4th Dept. 2009); *accord Fuentes v. Brookhaven Mem'l

Hosp.*, 10 A.D.3d 384, 385 (2004); *see also Zarda v. Altitude Express*, 855 F.3d 76, 81 (2d Cir.

2017), *reh'g en banc on different grounds* 883 F.3d 100 (2d Cir. 2018) (issue not identical where

prior proceeding applied a "higher standard of causation" than was required in later action).[5]

---

[5] Subject matter jurisdiction in *U.S. Bank* was based on diversity jurisdiction. "When a federal court sitting in diversity applies state substantive law as the rule of decision in a case, the preclusive effect of any decision by the federal court in that case is to be determined by the state preclusion law of the state in which the district court sits." *In re JPMorgan Chase Derivative Litig.,* No. 17 CIV. 5066 (JFK), 2018 WL

Wells Fargo was a party to the assignment agreement that it now contends violated champerty. The New York Court of Appeals has long held that a defendant who was a party to the purportedly champertous assignment may not raise a champerty defense to avoid such agreement under the doctrine of *in pari delicto*. *See Irwin v. Curie*, 171 N.Y. 409, 410-11 (1902) (holding that defendant could not assert the defense of champerty because he was a party to the allegedly champertous agreement).[6] In contrast, the defendant in *U.S. Bank* was not a party to any of the assignment agreements and, thus, was able to raise a champerty defense. As a result, "dismissal was based upon a defense that was personal to that party" and under New York law the prior judgment is not entitled to preclusive effect. *Raab*, 60 A.D.3d at 1381. Because Wells Fargo's presence in this action fundamentally changes the nature of the champerty defense, the issue here is not identical to the issue in *U.S. Bank*, nor was it necessarily decided. *Zarda*, 855 F.3d at 81.

Wells Fargo admits in its brief that the issues decided in *U.S. Bank* were not identical. Mot. at 1 ("Wells Fargo's Motion arises from a novel March 18, 2020 decision by Judge Broderick in a *nearly identical* case") (emphasis added). Although this admission is an understatement given the fact that Wells Fargo is a signatory to the agreements at-issue, the admission is dispositive because under binding authority the issue must be identical, not "nearly identical." In addition, although some of the same assignment agreements were at issue in *U.S.*

---

2305564, at *3 (S.D.N.Y. May 21, 2018) (quoting *NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd.,* 262 F. Supp. 2d 134, 143 (S.D.N.Y. 2003).

[6] In *Irwin* the plaintiff was an import broker whose customers assigned claims for duty overcharges to the plaintiff and the attorney defendant. *Irwin*, 171 N.Y. at 410. If they succeeded, the agreement provided that plaintiff's customers would receive 50% of the recovery and plaintiff and defendant were entitled to split the remainder. *Id.* at 410-11. They were successful, but the attorney defendant refused to give the plaintiff his share arguing that the agreement was void because it violated the doctrine of champerty. *Id.* 411. The Court of Appeals rejected this argument because "[i]f this were true, defendant would be enabled, by an open violation of law." *Id.*

*Bank*, the court in *U.S. Bank* considered only the effect of those agreements on the at-issue RMBS in that case, which were not the RMBS at issue in this case.[7] As a result, the issue of whether the Plaintiffs had a non-champertous purpose for obtaining the assignments relating to the RMBS in this case has not been litigated and is not identical to the issue decided in *U.S. Bank* because the two cases involve different securities. *Compare* ECF No. 80-2 *with U.S. Bank*, 1:14-cv-10116-VSB-DCF, ECF No. 390-2. But even if the issue had been litigated in *U.S. Bank*, it was *not necessarily decided* because the court did not need to rule on assignments of claims with respect to RMBS that were not at issue in the case.

**B.   A dismissal for lack of standing is not on the merits**

Only "a judgment on the merits" can have preclusive effect. *Singleton Mgmt., Inc. v. Compere*, 243 A.D.2d 213, 215 (1st Dept. 1998). "Because standing is a jurisdictional issue, the case law directs in such circumstances that a court dismiss the case for lack of Article III standing rather than entering summary judgment for the defendant on the merits." *In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 429 (S.D.N.Y. 2019). Here, *U.S. Bank* was dismissed for lack of standing and is, thus, not a judgment on the merits. Moreover, as noted above, *U.S. Bank* was based on a materially different factual record because Wells Fargo cannot argue rescission is appropriate here due to the doctrine of *in pari delicto* and because this case involves different RMBS.

**C.   Collateral estoppel does not apply to pure questions of law**

The New York Court of Appeals has held that collateral estoppel does not apply to a "pure question of law." *Am. Home Assur. Co. v. Int'l Ins. Co.*, 90 N.Y.2d 433, 440 (1997) ("*American Home*"); *see also United States v. Moser*, 266 U.S. 236, 242 (1924) ("Where, for

---

[7] Plaintiffs Blue Heron Funding II Ltd. and Blue Heron Funding IX Ltd. were not a party to *U.S. Bank* and, thus, the assignments they received were not at issue in *U.S. Bank*.

example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action upon a different demand are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases.").

In *U.S. Bank* the court announced a rule of law that Wells Fargo itself admits is "novel." Mot. at 1. The court held that in order to fall within the exception to champerty announced by the New York Court of Appeals in *Trust for Certificate Holders of Merrill Lynch Mortgage Investors, Inc. v. Love Funding Corp.*, 13 N.Y.3d 190, 199 (2009) ("*Love Funding*"), the plaintiffs must establish they suffered injury in fact sufficient to confer Article III standing. *U.S. Bank*, 2020 WL 1285783, at *15. The court's holding that an investment vehicle must demonstrate Article III standing before it can take an assignment of a claim for the benefit of its noteholders is a quintessential "pure question of law" that is not subject to collateral estoppel. *American Home*, 90 N.Y.2d at 440 (party was entitled to relitigate "whether an excess carrier must make a showing of actual prejudice when it seeks to avoid its coverage obligations"). This holding in *U.S. Bank* informed all others in the decision because, under binding authority, Plaintiffs indisputably would have had Article III standing by virtue of their receipt of the assignment of the claims. *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 271 (2008) ("assignee of a legal claim for money owed has standing to pursue that claim in federal court, even when the assignee has promised to remit the proceeds of the litigation to the assignor").

"In New York, . . . the prohibition of champerty has always been 'limited in scope and largely directed toward preventing attorneys from filing suit merely as a vehicle for obtaining costs.'" *Love Funding*, 13 N.Y.3d at 199. An assignment of claims does not violate champerty when the party receiving the assignment "had a relationship with the [assignor] that gave it a

substantial, legitimate interest in the transactions involved in the suit." *Id.* at 201. After exhaustively reviewing prior New York cases, the *Love Funding* court noted that this exception is extremely broad: "In short, the champerty statute does not apply when the purpose of an assignment is the collection of a legitimate claim." *Id.* The court cited with approval cases holding that plaintiffs who did not suffer losses associated with the claim still had a legitimate proprietary interest merely by virtue of their relationship with the assignor or the existence of some other business interest related to the claim. *Id.* (citing *Limpar Realty Corp. v. Uswiss Realty Holding, Inc.*, 112 A.D.2d 834, 836-37 (1st Dep't 1985) and *Prudential Oil Corp. v. Phillips Petroleum Co.*, 69 A.D.2d 763 (1st Dep't 1979)). *Love Funding* held that an investment vehicle (a trust acting through its master servicer) could take an assignment to pursue a claim relating to the assets held in trust for the benefit of the investment vehicle's noteholders because the vehicle took the assignment to protect a pre-existing proprietary interest. 13 N.Y.3d at 201-02.

Instead of applying the broad exception described in *Love Funding*, *U.S. Bank* held that in order to show there was a "pre-existing proprietary interest" an assignee must show that it had legal title to the claim – which makes no sense because one that takes an assignment does so to obtain legal title. *U.S. Bank*, 2020 WL 1285783, at *10, 15. But *Love Funding* did not equate a "pre-existing proprietary interest" with "injury-in-fact." To the contrary, the Court of Appeals stated that the champerty statute should not apply if the purpose of the assignment was the enforcement of a "legitimate claim" and it cited with approval New York cases holding that a party with a prior relationship with the assignor or with business interests that bear some relationship to the claim has a sufficient pre-existing proprietary interest regardless of whether the assignee itself had been damaged by the conduct of the defendant.

But even assuming *arguendo* that the *Love Funding* proprietary interest exception is identical to, and as stringent as, the injury-in-fact required for Article III or constitutional standing, *U.S. Bank* made an additional error in deciding a pure question of law because the cases cited in *U.S. Bank* involving CDOs or similar re-securitization vehicles uniformly hold that, *notwithstanding the grant* that is at issue here, a party that grants all title and interest to securities does not divest itself of Article III standing. *House of Eur. Funding I Ltd.*, 2015 WL 5190432, at *7 (investment vehicle had constitutional standing because "the issuer of a collateralized debt obligation, can be 'injured by actions that adversely affect the underlying assets'"); *FDIC v. Bank of N.Y. Mellon*, 15-cv-6570-ALC, ECF No. 47, at 6 (S.D.N.Y. July 10, 2017) ("Plaintiff here has satisfied the requirements of Article III standing"). The court in *U.S. Bank* simply misread the cases. *U.S. Bank*, 2020 WL 1285783, at *10 n.20, *14 n.24 (asserting that *House of Europe* and *FDIC* held the plaintiffs lacked Article III standing).

Finally, *U.S. Bank* sought to distinguish *Love Funding* on the ground that the plaintiff trust in that case had "title to the underlying mortgages," including "the defaulted mortgage loan at issue" upon which it later acquired the right to sue the loan's originator. *U.S. Bank*, 2020 WL 1285783, at *15. But *Love Funding* made no determination of "title" to the loan. Nor could it find the trust held title to the loans because, as a matter of law, a trust cannot hold title to a loan because such title is held by the trustee. *Natixis Real Estate Capital Tr. 2007-HE2 v. Natixis Real Estate Holdings, LLC*, 149 A.D.3d 127, 132 (1st Dep't 2017) ("we recognize that an RMBS trust is not unlike a typical common-law trust in which the trustee (rather than the trust itself, which is a legal fiction) holds the asset for the benefit of the certificate holders (who are the beneficiaries of the trust)"). Yet the trust had a sufficient proprietary interest without regard to whether or not it held title and, thus, the proprietary interest of the plaintiff trust in *Love Funding* was no greater

14

than the plaintiffs' interest in *U.S. Bank*. This is yet another pure question of law that is not subject to collateral estoppel.

### D. Plaintiffs did not have a full and fair opportunity to litigate the issue of champerty

Plaintiffs Blue Heron Funding II Ltd. and Blue Heron Funding IX Ltd. were not parties to *U.S. Bank*. *Cook v. City of Utica*, 88 N.Y.2d 833, 835 (1996) ("common-law principles of collateral estoppel cannot be invoked" against a party that was not a party to the prior proceeding); *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 177 (3d Cir. 1994) (plaintiff not precluded by prior action involving co-plaintiff and counsel). Accordingly, these Plaintiffs indisputably did not have a "full and fair opportunity to litigate the issue." *Marvel Characters, Inc.*, 310 F.3d at 288–89 (internal quotations omitted).

The other Plaintiffs were also deprived of a "full and fair opportunity" to litigate the issues presented in *U.S. Bank*. After years of discovery, the parties' summary judgment briefs in *U.S. Bank* were understandably and overwhelmingly devoted to the merits of the claims. Defendant U.S. Bank itself did not even brief champerty, instead borrowing that argument from co-defendant Bank of America, which had devoted only three pages to that issue in its opening brief and settled out of the action shortly before summary judgment oral argument. The plaintiffs responded in a proportional manner due to page limits imposed by the court. Despite the limited briefing on the subject, the court in *U.S. Bank* issued a 35-page Opinion and Order that analyzed, at length, only the one thinly briefed issue of champerty and how it purportedly impacted standing. Many of the issues discussed in *U.S. Bank* were never raised in Bank of America's minimal briefing and the plaintiffs, thus, never had an opportunity to litigate them.

The plaintiffs in *U.S. Bank* recently filed a motion for reconsideration of that ruling. *U.S. Bank*, 1:14-cv-10116-VSB-DCF, ECF Nos. 423-424. The pending reconsideration motion

further weighs against applying collateral estoppel to *U.S. Bank*.

### IV.    The Phoenix Light Plaintiffs and Plaintiff Commerzbank would be prejudiced if Wells Fargo is permitted to litigate this issue in the context of the current summary judgment motion

Wells Fargo filed a joint motion for summary judgment applicable to both the *Phoenix Light* and *Commerzbank* actions. This was the most efficient way to proceed given the substantial overlap of merits-based arguments and the factual record. Wells Fargo served (i) a 70-page summary judgment brief with additional appendices and charts, (ii) an 896-paragraph Rule 56.1 statement with over 100 pages of additional appendices and charts, and (iii) three summary judgment declarations, including a declaration on foreign law, attaching 306 exhibits. Both sets of Plaintiffs would be prejudiced if Wells Fargo was permitted to belatedly interject this issue, which is specific to the Phoenix Light action, into an already voluminous and complex joint summary judgment record.

### A.    Plaintiffs would be prejudiced if the Phoenix Light Plaintiffs were forced to respond to the complicated issues raised in *U.S. Bank* in a joint brief subject to the current order regarding page limits

Wells Fargo seeks to insert an exceedingly complex argument in its brief, belatedly, by essentially incorporating the 35-page decision in *U.S. Bank* arguing in a conclusory fashion that the case was "nearly identical" and correctly decided. Of course, in order to respond to such an argument, the Plaintiffs would need to expend significantly more pages than Wells Fargo has devoted in its brief. Yet Wells Fargo has refused to agree to permit Plaintiffs additional pages to respond to this new argument. This significantly prejudices the Plaintiffs because Commerzbank should not be forced to sacrifice space for its merits-based arguments merely because Wells Fargo wants to belatedly insert an argument that applies only to the Phoenix Light Plaintiffs. The Phoenix Light Plaintiffs should similarly be permitted enough space to respond to all of the

arguments directed at it. *Baez*, 2013 WL 5272935, at *7 ("[p]rejudice is one of the most important reasons for denying a motion to amend").

Wells Fargo only filed this Motion in the *Phoenix Light* action. Because the Motion also impacts the brief in *Commerzbank*, Wells Fargo's Motion should also be denied as procedurally improper because Wells Fargo failed to file its Motion in that case. It appears that Wells Fargo did not file any such motion in *Commerzbank* because it would only have highlighted its complete inability to demonstrate good cause.

### B.  Wells Fargo sandbagged Plaintiffs in an attempt to obtain a more favorable order concerning page limits

Wells Fargo's current Motion also demonstrates a distasteful level of gamesmanship and a lack of candor. *U.S. Bank* was issued on March 18, 2020. Between March 20 and March 26, Plaintiffs' counsel and Wells Fargo's counsel exchanged eleven e-mails regarding page limits for the remaining summary judgment briefing in light of Plaintiffs' disclosure that they would be filing cross-motions for summary judgment. On March 24, the parties had a telephone conference with counsel for Wells Fargo to discuss the page-limit request. Wells Fargo's counsel never mentioned on that call or in any of those e-mails that it intended to amend its summary judgment motion or that it was considering such a motion in light of *U.S. Bank*.

The parties were unable to reach a consensus on page limitations because Wells Fargo sought a disproportionate number of pages for its reply and cross-motion opposition brief. Plaintiffs submitted their proposal to the Court on March 26, 2020 (ECF No. 510), and Wells Fargo submitted a competing proposal on March 27, 2020 (ECF No. 511). The Court issued its order on page limits on March 30, 2020 (ECF No. 513). Wells Fargo sought clarification of that order in a letter to the Court on March 31, 2020 (ECF No. 514). Wells Fargo did not advise the

Court that it intended to file a motion to amend its summary judgment motion, or was considering such a motion, in any of the letters sent to the Court.

On March 31, 2020, the same day Wells Fargo sought clarification of the page limits and scheduling order without notifying the Court of its intention to add new arguments, Wells Fargo sent Plaintiffs an amended summary judgment motion, adding the arguments referenced in the Motion, as well as forty-six new paragraphs to its Rule 56.1 statement and forty-one new exhibits. It is apparent that these papers had been finalized for some time because the amended Rule 56.1 statement Wells Fargo served on March 31, 2020 contains a heading which says "Draft 3/26/2020."[8]

Wells Fargo argues that it did not know that it was going to seek amendment until March 31, 2020. This is demonstrably untrue because Wells Fargo served a full set of documents on March 31 that were dated March 26. But even if Wells Fargo did not know until March 31 that it intended to file this motion, it does not explain why Wells Fargo failed to disclose its intentions in its letter to the Court on March 31 or why it failed to disclose to Plaintiffs that it was considering such a motion during the parties discussions after *U.S. Bank* was issued. Wells Fargo appears to have expressly negotiated a long opposition strategically so it could make a very brief argument concerning *U.S. Bank* in its opening, force Plaintiffs to sacrifice space for their joint merits-based arguments to address a complicated 35-page decision, and then respond using the extra pages that Wells Fargo secured by withholding its intentions from Plaintiffs and the Court.

---

[8] Pursuant to the Stipulation and Order Modifying Schedule to Accommodate the Exchanges of Confidential Information and Filings of Redacted Briefs (ECF No. 509), the parties are serving their summary judgment materials to each other without providing copies to the Court until briefing is complete.

**C.  If the Court is inclined to allow Wells Fargo to raise its belated champerty defense now it should order Wells Fargo to file a new motion or allow Plaintiffs to file a much longer opposition brief**

Wells Fargo concedes that the Court need not permit Wells Fargo to amend its current summary judgment motion to add its new arguments. Even if the Court determines that the impact of *U.S. Bank* should be briefed now – the Court can just permit Wells Fargo to file a separate motion on this issue. Mot. at 7 ("this Court can order separate briefing on the issue").[9] Indeed, all of the cases Wells Fargo cites involve instances where the courts granted permission to file *successive* summary judgment motions, not amendments to existing motions.[10] If the Court is inclined to entertain Wells Fargo's Motion at all, it should still deny Wells Fargo's Motion to amend and order Wells Fargo to file another summary judgment motion subject to the default page limit rules applicable to such motions. This would avoid the added complexities of briefing this non-merits-based issue in a joint brief with Commerzbank to which the argument simply does not apply.

---

[9] As noted above in Section I, Plaintiffs submit that no further motion should be permitted because Wells Fargo waived its objection to the Phoenix Light Plaintiffs' status as real parties in interest so the question of champerty is irrelevant. And, as set forth in Section II, even if it were permitted to pursue a champerty defense, Wells Fargo waived its ability to seek summary judgment on that defense and it now must be adjudicated at trial.

[10] *See, e.g.*, *Hill v. Rayboy-Brauenstein*, No. 02 CIV. 3770 (RJS), 2008 WL 231439, at *1-2 (S.D.N.Y. Jan. 24, 2008) (granting permission for movant to file a renewed summary judgment motion after the disposition of a prior summary judgment motion); *Sira v. Morton*, 380 F.3d 57, 68 (2d. Cir. 2004) (holding that the movant was not prejudiced by the conversion of its motion on the pleadings into one for summary judgment because it could file a later summary judgment motion); *Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, No. 13 CIV. 2576 (LGS), 2017 WL 1133425, at * 5 (S.D.N.Y. Mar. 24, 2017), *aff'd sub nom. Int'l Cards Co. Ltd. V. Mastercard Int'l Inc.*, 741 F. App'x 41 (2d Cir. 2018) (permitting a second summary judgment motion to address a discrete issue not raised in a prior summary judgment motion); *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (affirming an order for summary judgment granted in response to one motion, initiated by the movant and not considered *sua sponte*); *Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 79-80 (2d Cir. 2014) (granting summary judgment following two rounds of dispositive motion briefing).

Alternatively, if the Court grants Wells Fargo's Motion to amend, Plaintiffs request an additional twenty-five pages for their opposition and cross-motion brief. As noted, the Plaintiffs in U.S. Bank recently filed a motion for reconsideration that was twenty-three pages long and was supported by two pages of appendices. This space was necessary to address the many errors in the 35-page opinion and the issues that were never briefed to the court because the defendant never raised them in its motion. Failure to grant this modification to page limits would severely prejudice both sets of Plaintiffs (*i.e.,* Phoenix Light and Commerzbank). Wells Fargo should not require any additional pages to respond because the current scheduling order reflects the space that it requested fully aware that it would attempt to add this argument.

## CONCLUSION

For the foregoing reasons, Wells Fargo's Motion should be denied. In the alternative, if the Court is inclined to allow Wells Fargo to brief the issue at the current time, it should order Wells Fargo to file a separate motion governed by default rules concerning page limits. If the Court instead grants Wells Fargo's Motion, then Plaintiffs respectfully request an additional twenty-five pages for their opposition and cross-motion.

Dated:  April 24, 2020

Respectfully submitted,

/s/_____*Steven S. Fitzgerald*_____
David H. Wollmuth
Steven S. Fitzgerald
Ryan A. Kane
Sean P. McGonigle
Ryan J. Keenan
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
Fax: (212) 382-0050
dwollmuth@wmd-law.com
sfitzgerald@wmd-law.com

rkane@wmd-law.com
smcgonigle@wmd-law.com
rkeenan@wmd-law.com
*Attorneys for Plaintiffs*